UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Michael A. Wolf, | ) | Case No. 14 B 27066 |
| | ) | |
| Debtor. | ) | Hon. Deborah L. Thorne |
| _____ | ) | |
| | ) | |
| N. Neville Reid, not individually but solely in his capacity as Chapter 7 Trustee for bankruptcy estate of Michael A. Wolf | ) ) ) ) | Adversary No. 16 A 00066 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Michael Wolf, Scott Wolf, Peter Wolf, Zig-Zag, Corp., ZZC, Inc. (IL), ZZC, Inc. (DE), MMQB, Inc., Hound Ventures, Inc., SHBM, Inc. MaCherie LLC, Melissa Skolnick and Four Legs, Inc. | ) ) ) ) ) ) ) | |
| Defendants. | | |

**Opinion**

**Introduction**

This matter comes before the court upon the trustee's motion for sanctions against Scott Wolf ("Scott Wolf" or "Scott").[1] Scott Wolf has claimed that his personal noncompliance with this court's March 2, 2018 order is excused by virtue of the Fifth Amendment to the United States Constitution, since to comply with the order, he claims, would require him to testify

---

[1] The trustee's motion for sanctions against MMQB, Inc., Hound Ventures, Inc., SHBM, Inc., and Ma Cherie LLC has already been preliminarily granted pending the receipt of valuation evidence. *See* Order, Docket No. 566. The motion was granted because none of these entities had a viable defense to compliance with the order based on the Fifth Amendment, and no other defense had been asserted. *Braswell v. United States*, 487 U.S. 99, 105–06 (1988) (noting that a corporation has no Fifth Amendment privilege).

against himself in an incriminating manner. The court concludes, in its discretion, that Scott Wolf has effectively waived his privilege as to the Cloud Server[2] since he agreed to an earlier order commanding him to provide such access and also failed to raise the privilege objection in response to the trustee's pertinent request for production.[3] Since he has waived the privilege, Scott Wolf is not excused from personally complying with this court's March 2, 2018 order, which ordered him to provide access to the Cloud Server, and he is, therefore, held in default with an entry of default judgment to follow pending the court's receipt of evidence on which to base an assessment as to the proper amount of the judgment. Further, Scott Wolf is ordered to pay the amount of the sanction imposed in the March 2, 2018 order for non-compliance with that order. Because compliance with that order is no longer possible after the entry of this order holding Scott Wolf in default for non-compliance with that order, the $500 per day sanction imposed by the March 2, 2018 order will no longer run.

## **Background**

In January of 2016, the trustee commenced this adversary proceeding (among others, some commenced later, which have generally been consolidated for discovery purposes) to recover property or its value from various third parties, including Scott Wolf, for the benefit of Michael Wolf's bankruptcy estate. The transfers made were allegedly of those parts of a family business, an online furniture trade publication known as the "Monday Morning Quarterback," that allegedly belonged to Michael Wolf in the run-up to his bankruptcy filing.[4]

---

[2] By "Cloud Server" it is meant the server(s) owned or controlled by Amazon to which Scott Wolf has access and/or control by virtue of the Amazon Cloud Server account that he has admitted he owns. *See, e.g.*, Transcript of Proceedings Held May 03, 2018, at 12, lns. 8–13.

[3] Because the court finds that he has waived the privilege with respect to the Cloud Server and is, therefore, not excused from complying with this court's March 2, 2018 order concerning providing access to the Cloud Server, the court does not reach the question as to whether Scott Wolf waived the privilege with respect to his personal computer(s) over which he has physical possession.

[4] Scott Wolf is Michael Wolf's son.

2

Beginning in late 2016 and culminating in April of 2017, the trustee served several discovery requests on Scott Wolf, one of which included a request to produce "[a]ll computers used to publish the MMQB Contract Furniture News in all 'formats' referenced on the website www.mmqb.com." *See* Trustee's Mot. Compel, Docket No. 461, Exh. A, at 74.[5] In September of 2017, the trustee filed a motion to compel with this court, arguing that the requests had not been complied with. *See* Trustee's Mot. Compel, Docket No. 461.

The parties worked out a resolution to the motion to compel whereby they agreed, among other things, that the trustee's independent computer expert would be given access to the Amazon Cloud Server account that housed much of the relevant financial information relating to the online publication, with an earlier-entered protective order safeguarding any private, non-relevant information. *Compare* Trustee's Mot. Sanctions, Docket No. 479, Exh. E, at 7–8, *with* Order Granting Mot. Compel, Docket No. 475, at 1–2; *see also* Transcript of Proceedings Held May 03, 2018 (hereinafter "Tr."), at 3, lns. 10–12 (noting that Scott Wolf agreed to the form of the order). No objection based on the Fifth Amendment was ever raised.

Following the entry of that order, Scott Wolf did not comply with its terms. *See* Trustee's Mot. Sanctions, Docket No. 479, Exh. B, at 2, Exh. C, at 2, Exh. F, at 2. The trustee brought a motion for sanctions in mid-November of 2017, and Scott Wolf defended largely by citing logistical difficulties with providing access.[6] *See* Trustee's Mot. Sanctions, Docket No. 479;

---

[5] All docket references are to docket entries contained in the proceeding numbered 16ap00066 unless otherwise indicated.

[6] The court finds that all of the issues cited by Scott Wolf as a justification for not providing access after the order had been entered could reasonably have been known by Scott Wolf prior to the entry of the order, since he has largely (thought not without exception) admitted to owning and using the account in part to run the online business. Regardless of that fact, if Scott Wolf truly believed the logistical difficulties to have been an insurmountable bar to compliance, Scott could have moved for reconsideration of the court's prior order, the modification of which could have been granted if the court, in its discretion, deemed such a modification to be proper in light of these circumstances. *Tingle v. Hebert*, No. CV 15-626-JWD-EWD, 2017 WL 2543822, at *1 n.3 (M.D. La. June 12, 2017) (noting that

3

Scott Wolf's Response, Docket No. 486, at 5, ¶ 8. Again, Scott Wolf did not object based on the applicability of any Fifth Amendment privilege. Based largely on a motion made by another defendant, in which Scott Wolf joined, the court orally stayed the discovery in all of the adversary proceedings for a completely unrelated reason,[7] namely a recent divorce ruling that, at the time, had an unknown impact on the ability of the trustee to recover certain business assets for the benefit of Michael Wolf's bankruptcy estate.[8]

No such motions were ever filed, however. In mid-February of 2018, three months after the trustee's motion for sanctions was first heard, the court lifted the stay on discovery. *See* Docket No. 532. In early March, the trustee's motion for sanctions from November was again heard. No objections were raised based on the Fifth Amendment.[9] The motion was granted. *See* Order Granting Mot. Sanctions, Docket No. 542. Scott Wolf was again ordered to turn over access to the Cloud Server at the price of $500 a day if he chose not to comply following March 15, 2018. *Id.* at 2, ¶ 6. That date came and went; the trustee then brought another motion now seeking to have Scott Wolf held in default pending a proposed default judgment order from the

---

an order granting a motion to compel is interlocutory); *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015) (noting that a trial court has the discretion to reconsider prior interlocutory orders). Unilateral noncompliance with the terms of the order, however, is not a permissible alternative to bringing a motion to reconsider or modify. *Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219, 228 (D.D.C. 2015) ("Parties cannot 'pick and choose when to comply with a court order depending on counsel's unilaterally determined excuses or justifications not to comply with the order. The order is either obeyed or appealed.'") (quoting *Moore v. Chertoff*, 255 F.R.D. 10, 34 (D.D.C. 2008)).

[7] In some circumstances, courts have been asked to stay and have stayed discovery in civil proceedings pending the outcome of a criminal matter in which the civil defendant is implicated when the defendant invokes the Fifth Amendment. *See, e.g., Shell Offshore, Inc. v. Courtney*, No. CIV.A. 05-1956, 2006 WL 1968926 (E.D. La. July 12, 2006); *Cruz v. Cty. of DuPage*, No. 96 C 7170, 1997 WL 370194 (N.D. Ill. June 27, 1997). Nothing of the sort happened here; the Fifth Amendment was never raised and the stay was granted for reasons having nothing to do with any pending criminal matters.

[8] As the trustee pointed out, the correct way for any such legal issues to have been brought to the court's attention would have been to have brought case or issue-dispositive motions such as motions for summary judgment.

[9] Again, the trustee's November sanctions motion was based on an order the precise language of which (1) had been agreed to by the parties and (2) explicitly commanded Scott Wolf to provide access to the server to the computer expert.

4

trustee based on a valuation expert's estimate of the value of the business components that were alleged to have been transferred by Michael Wolf. *See* Trustee's Mot. Sanctions, Docket No. 551.

In response to this latest motion for sanctions, Scott Wolf has asserted his Fifth Amendment privilege against self-incrimination.[10] He argues that to provide access to the Cloud Server as ordered would be a testimonial and incriminating act. The trustee has responded by asserting that Scott Wolf has waived the privilege and did not make any argument on the substantive merits of Scott Wolf's invocation of the privilege.

## Discussion

### I. Jurisdiction

Statutory subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1334(b), 157(a), 157(b)(2)(H). Scott Wolf has not consented to the entry of final orders by this court in this proceeding. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1949 (2015); Scott Wolf's Response, Docket No. 120, at 4, ¶¶ 12, 13; Scott Wolf's Statement, Docket No. 562, at 2. Scott Wolf has not filed a proof of claim against the estate. Nevertheless, the great bulk of the part of the trustee's complaint that implicates the conduct of Scott Wolf is comprised of fraudulent transfer claims. *See* Trustee's First Amended Complaint, Docket No. 95, at 22–48. This court has constitutional authority to enter final orders on fraudulent transfer claims. *See In re Millennium Lab Holdings II, LLC*, 575 B.R. 252, 269 (Bankr. D. Del. 2017); *In re Kimball Hill, Inc.*, 480 B.R. 894, 906–08 (Bankr. N.D. Ill. 2012) ("State law fraudulent transfer claims, however, have bankruptcy law as their source."); *see also Stern v. Marshall*, 564 U.S. 462, 502

---

[10] Scott Wolf also asserted the privilege on behalf of various corporations and LLCs, but those assertions have already been overruled. *See Braswell v. United States*, 487 U.S. 99, 105–06 (1988) (noting that a corporation has no Fifth Amendment privilege); Order Granting in part Trustee's Mot. Sanctions, Docket No. 566, at ¶ 1.

5

(2011) ("We do not think the removal of *counterclaims* . . . from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; we agree . . . that the question presented here is a 'narrow' one.") (emphasis added). Similarly, though Scott Wolf has revoked his consent to a jury trial being conducted by this court, no right to a jury trial exists on any issues presently before the court or on any issues that may later arise concerning the entry of a default judgment as a sanction under Fed. R. Civ. P. 37(b)(2). *See, e.g., Sells v. Berry*, 24 F. App'x 568, 571–72 (7th Cir. 2001); *Artis v. Yellen*, 309 F.R.D. 69, 75 (D.D.C. 2015) ("Discovery disputes, of course, are not issues for a jury."), *aff'd*, No. 15-5260, 2015 WL 10583057 (D.C. Cir. Dec. 21, 2015); *Chemtall, Inc. v. Citi-Chem, Inc.*, 992 F. Supp. 1390, 1412 (S.D. Ga. 1998); *Danielson v. United Seafood Workers Smoked Fish & Cannery Union, Local 359-AFL-CIO*, 405 F. Supp. 396, 403 (S.D.N.Y. 1975).

## II. Waiver of Fifth Amendment Privilege

Due to Scott Wolf's long failure to invoke the privilege, his having agreed to the text and form of an order commanding him to perform the very act he claims to now be privileged, and his contradictory statements regarding the Cloud Server's existence, the court finds that Scott Wolf has waived his Fifth Amendment privilege against self-incrimination with respect to the act of producing access to the Cloud Server.[11] For this reason, the court holds Scott Wolf in default

---

[11] Scott Wolf argued at the hearing that any waiver would be negated by changed circumstances. It is unclear exactly what these circumstances would be. The court finds as a factual matter that his assertion that he "recently" became aware of several conversations from 2012–13, conversations between his mother, Edward Lewis, Barry White, and/or the trustee, is not credible. *See* Scott Wolf's Supp. Response, Docket No. 567, at 6–8, ¶¶ 22–26. If he has a basis for invoking the Fifth Amendment based on a reasonable fear of criminal prosecution, a question the court does not decide due to its disposition on other grounds, such a fear could properly be based on the trustee's theory of the case, which tends to implicate Scott Wolf in factual conduct that could also render him criminally liable for bank fraud, tax fraud, bankruptcy fraud, or conspiracy to commit the same. Such a fear might further be bolstered by the bankruptcy trustee's somewhat close relationship with the United States Trustee. *See, e.g.*, DOREEN SOLOMON, CHAPTER 7 TRUSTEES PLAY IMPORTANT ROLE IN ENFORCEMENT AGAINST BANKRUPTCY CRIMES, https://www.justice.gov/ust/file/abt_summer2017.pdf/download. The trustee's current theory of the case, and thus its implications for Scott Wolf, has been disclosed since May 31, 2016, however. *See*

with a proposed default judgment order to be filed by the trustee at a later date. It further orders Scott Wolf to pay the trustee the amounts owed as a sanction for noncompliance with the court's first sanctions order.

The Fifth Amendment to the United States Constitution provides in pertinent part that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. Though the text of the provision speaks of "criminal case[s]," the privilege created by the amendment has long been held to apply in civil matters as well. *McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924); *Nat'l Acceptance Co. of Am. v. Bathalter*, 705 F.2d 924, 926 (7th Cir. 1983). The privilege may be invoked during the discovery phase of civil litigation. *Bathalter*, 705 F.2d at 927 (citing *In re Folding Carton Antitrust Litig.*, 609 F.2d 867, 871 (7th Cir. 1979) (per curiam)).

Specifically, the Fifth Amendment privileges an individual "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Baxter v. Palmigiano*, 425 U.S. 308, 316 (1976) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)); *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 389 (7th Cir. 1995). In the realm of civil discovery, this means, among other things, that an individual may not be compelled to produce items where the very act of production amounts to a testimonial communication that also has a tendency to incriminate the individual. *Baltimore City Dep't of Soc. Servs. v. Bouknight*, 493 U.S. 549, 554–55 (1990);

---

Trustee's First Amended Complaint, Docket No. 95. To the extent any fear is based on pleadings contained in a separate adversary proceeding concerning Egg Worldwide, Inc., the court notes that the trustee's complaint in that adversary proceeding was filed on July 22, 2016. *See* Transcript of Proceedings Held April 10, 2018, Docket No. 570, at 10; Transcript of Proceedings Held May 03, 2018, at 11, lns. 1– 19; Trustee's Complaint, Docket No. 1, 16ap00482. Scott Wolf thus had knowledge of the trustee's allegations long before either the trustee's discovery request for computers or the trustee's first motion to compel, both of which occurred in 2017.

7

*Fisher v. United States*, 425 U.S. 391, 410–11 (1976); *In re Special Feb. 2011-1 Grand Jury Subpoena Dated Sept. 12, 2011*, 691 F.3d 903, 906 (7th Cir. 2012).

The Fifth Amendment privilege is not self-executing, however, and may be found to have been waived if it is not invoked in a timely manner. *Maness v. Meyers*, 419 U.S. 449, 465–66 (1975); *Rogers v. United States*, 340 U.S. 367, 370–71 (1951); *Yakus v. United States*, 321 U.S. 414, 444 (1944) ("No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it."); *United States ex rel. Vajtauer v. Comm'r of Immigration at Port of New York*, 273 U.S. 103, 113 (1927); *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981). A waiver may be found if one agrees to an order commanding one to do the very thing later claimed to be privileged without invoking the privilege at or before the time of the entry of the order. *See S.E.C. v. Telexfree, Inc.*, 164 F. Supp. 3d 187, 192 (D. Mass. 2015). The decision as to whether such a waiver may be found in a particular case lies within the wide discretion of this court in ruling on discovery matters. *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998).[12]

Here, the October 24, 2017 order was agreed to by Scott Wolf, as evidenced by exhibits showing collaboration on the text of the order and by the trustee's unrebutted statements during the hearing. *See Telexfree, Inc.*, 164 F. Supp. 3d at 192 (noting that the order in question had been agreed to); *see also Albion Labs., Inc. v. Seroyal Brands, Inc.*, No. C-79-1709, 1979 WL 24960, at *2 (N.D. Cal. Dec. 18, 1979) (taking judicial notice of circumstances surrounding the entry of an agreed order); *compare* Trustee's Mot. Sanctions, Docket No. 479, Exh. E, at 7–8,

---

[12] When a question is committed to the discretion of the trial court, "it is possible for two judges, confronted with the identical record, to come to opposite conclusions and for the appellate court to affirm both." *United States v. Banks*, 546 F.3d 507, 508 (7th Cir. 2008).

*with* Order Granting Mot. Compel, Docket No. 475, at 1–2; *see also* Tr. 3, at lns. 10–12 (noting that Scott Wolf agreed to the form of the order). Language could easily have been inserted preserving any objection based on the Fifth Amendment, but it was not so inserted. *See S.E.C. v. Oxford Capital Sec., Inc.*, 794 F. Supp. 104, 108–09 (S.D.N.Y. 1992). The court further finds that the circumstances coloring Scott's invocation of the privilege have not changed in any material way since the entry of the October 24, 2017 order, because it does not credit as true Scott's assertion that he only recently became aware of various conversations from 2012–13. He did not buttress that assertion with any evidence or any explanation as to how he only recently became aware of the conversations.[13] The court thus gives this assertion no weight in light of that fact and also his lack of credibility in other areas, such as his completely contradictory factual assertions regarding the existence of the Cloud Server.[14] On this latter point, *compare* Response, Docket No. 486, at 2, 3, 5, 7, *and* Declaration of Scott Wolf, *id.* Exh. D, at 3, 5–6; Tr. 12, lns. 12–13, *with* Response, Docket No. 553, at 6, ¶¶ 20, 22 (calling into question the very existence of the Cloud Server despite numerous assertions by counsel and personally under oath that directly confirm the existence of the Cloud Server); *see also* Tr. 14, 15, at lns. 19–25, 1–25 (noting the contradictory statements made regarding the computers used to run the publication generally). Moreover, the scope of the order entered on March 2, 2018 did not vary in scope from the October 24, 2017 agreed order with respect to access being given to the Cloud Server. *Compare* Order Granting Mot. Compel, Docket No. 475, at 2, ¶ 5, *with* First Order Granting Mot. Sanctions, Docket No. 542, at 1–2, ¶ 5.

---

[13] Despite some vague promises to the contrary. *See* Transcript of Proceedings Held April 10, 2018, Docket No. 570, at 17–19.

[14] Because the court does not credit Scott Wolf's statements on this point, the court does not reach the question as to whether or not those conversations would have materially changed the circumstances surrounding the propriety of his Fifth Amendment invocation. *See also supra* note 10.

9

What's more, the trustee served a request for production on Scott Wolf in April of 2017 asking in pertinent part for "[a]ll computers used to publish the MMQB Contract Furniture News in all 'formats' referenced on the website www.mmqb.com." *See* Trustee's Mot. Compel, Docket No. 461, Exh. A, at 74. Scott Wolf has generally admitted that the Cloud Server is used to publish the online publication at issue here, and the business is not run on any local computers that he physically possesses. *See* Declaration of Scott Wolf, Docket No. 486, Exh. D, at 32, ¶ 11, bullet point no. 1; *id.* at 33, ¶ 11, bullet point no. 1 (on p. 33). A "server" is a "a *computer* in a network that is used to provide services (such as access to files or shared peripherals or the routing of e-mail) to other computers in the network."[15] It is thus a "computer" used to publish the online publication at issue, and it is a computer to which Scott Wolf has admitted he has access and therefore control, if not physical possession. *See, e.g.*, Tr. 31, at lns. 12–21. The Cloud Server was thus implicated by the trustee's requests for production.

The Fifth Amendment privilege was never raised in response to this discovery request, however. This court, in its discretion, therefore finds any objection on the basis of the Fifth Amendment as it relates to the production of access to the Cloud Server to have been waived on that basis as well. *See United Auto. Ins. Co. v. Veluchamy*, 747 F. Supp. 2d 1021, 1026–27 (N.D. Ill. 2010); *In re Friedman*, 543 B.R. 833, 843–44 (Bankr. N.D. Ill. 2015); *Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659, 661–62 (D. Colo. 2000) (noting that Fed. R. Civ. P. 34(b)(2)(C) should be interpreted similarly to Fed. R. Civ. P. 33(b)(4)); *Deal v. Lutheran Hosps. & Homes*, 127 F.R.D. 166, 168 (D. Alaska 1989) ("It appears to the court that on principle, and except to avoid

---

[15] *Server*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/Server (last visited May 21, 2018) (emphasis added). Because it is a "Cloud Server," the relevant network here would seem to be the internet. *See Cloud Computing*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/cloud%20computing (last visited May 21, 2018); *Internet*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/Internet (last visited May 21, 2018).

manifest injustice, procedures under Rule 45(d)(1) and under Rules 33, 34, and 36 should be similar, if not identical."); *Orchestratehr, Inc. v. Trombetta*, No. 3:13-CV-2110-P, 2015 WL 11120526, at *9 (N.D. Tex. July 15, 2015); *Pine Glades Dev., LLC v. Sullivan Constr., LLC*, No. 09-CV-129-D, 2011 WL 13165147, at *2 (D. Wyo. Jan. 26, 2011); *Georgia-Pac., LLC v. Diversified Transfer & Storage, Inc.*, No. 10-CV-083-F, 2011 WL 13079471, at *2 (D. Wyo. Jan. 31, 2011); *see also* Fed. R. Civ. P. 34(b)(2)(C).[16] The lengthy delay in asserting the privilege (roughly one year) along with Scott Wolf's contradictory factual assertions in invoking the privilege leave the court with the firm conviction that Scott Wolf's eleventh-hour invocation is at least in part an attempt at dilatorily engaging in procedural gamesmanship, which further supports the court's finding of waiver. *See Day v. Boston Edison Co.*, 150 F.R.D. 16, 21–25 (D. Mass. 1993); *compare* Response, Docket No. 486, at 2, 3, 5, 7, *and* Declaration of Scott Wolf, *id.* Exh. D, at 3, 5–6; Tr. 12, lns. 12–13, *with* Scott Wolf's Response, Docket No. 553, at 6, ¶¶ 20, 22.

## Conclusion

In sum, the court finds that Scott Wolf has waived his Fifth Amendment privilege as it relates to producing access to the Cloud Server. He both (1) agreed to the form of an order commanding him to perform the very act he now claims to be privileged, and (2) failed to timely raise the privilege as an objection to the trustee's requests for production. A separate order will issue in conformity with this opinion.

---

[16] *Cf. Ott v. City of Milwaukee*, 682 F.3d 552, 558 (7th Cir. 2012) (noting that, under Fed. R. Civ. P. 45(d)(2), the recipient of a subpoena must "raise all objections at once, rather than in staggered batches, so that discovery does not become a 'game'"); *Young v. City of Chicago*, No. 13 C 5651, 2017 WL 25170, at *6 (N.D. Ill. Jan. 3, 2017) (discussing Fed. R. Civ. P. 45(d)(2) alongside Fed. R. Civ. P. 34(b)(2)).

ENTER:

                                                                                                        /s/ Deborah L. Thorne

                                                                                                        Deborah L. Thorne
                                                                                                        United States Bankruptcy Judge

Dated: May 24, 2018